Judge Buckner,
delivered the opinion of the court.
This was an action of detinue, instituted in September, 1828, by Keizer, against' Bostick to recover from him a slave named Absolam.
Upon an agreed case, the facts and law were submitted to the circuit court. Judgment was entered in favor of Keizer, for the'''slave, and damages for his detention ; to reverse which, Bostick prosecutes this appeal.
The following is the substance of the agreed case.
John Syme conveyed his estate to William Cochrane and W. Cunningham, by two deeds of trust, each bearing date, the 21st of September, 1821, one designated by letter A; the other by letter B. The slave in controversy, is included in deed A. Syme and wife, resided in Kentucky, as did also Cochrane; Cunningham lived in the state of Virginia; Cochrane had the custody and management of the trust property; and care, of Syme’s family. Some of the slaves mentioned in the deeds of trust he hired out, sold others, and provided for Syme’s family a residence, furnishing them with partial supplies from year to year. Having rented a tenement, from Price and Robinson, for the use of Mrs. Syme and children, which they occupied, he executed to the lessors, his note for the amount agieed upon as rent, upon which they sued, recovered judgment, in the Fayette circuit court, and caused an execution oi fieri facias to be issued thereon. Syme having died shortly after the execution of the deeds,'Coch-rane suffered such of the slaves, as were not hired out, to remain with Mrs. Syme and children on the place which he had rented for them, except that one or two of them were sometimes in the employment of himself and family.
Bostick had married one of Syme’s daughters, and with the consent of his mother-in-law, he had taken *598 possession of the slave in controversy, but there was no agreement, that he should retain the possession of him for any definite period. The sheriff of Fayette, into whose hands the execution above mentioned hadj been placed, called on Cochrane, who gave him written directions to levy it, on the slave Absolam; which the officer did, whilst he was at Bostick’s house; who objected, alleging, that he bolonged to Mrs. Syme and children. The sheriff did not take the slave out of the appellant’s possession; hut advertised, that under said execution, he would sell, on a day named, Cochrane’s right to him. On the day appointed, Bostick produced the slave; but refused'to deliver him; whereupon the sheriff proclaimed, that he would sell Cochrane’s, right to him; but would not deliver possession to the purchaser. He offered Cochrane’s right for sale, to the highest bidder, and the appellee became the purchaser thereof, at $31, although the slave was worth $300, and immediately demanded of the appellant, that he would deliver possession of the slave to him, which he refused, and Keizer instituted this suit. A suit in chancery had been instituted in the name of Syme’s widow and heirs, against Cochrane and Cunningham, in the: Fayette circuit court, the papers in which wrere to be considered as evidence in this cause.
The execution above referred to, bears date 28th July, 1828, is in favor of Robinson and Price, and is for $142 80 cents, and costs, upon which the sheriff made: a return in substance, that he had levied on a slave named Absolam, in the possession of John Bostick, and sold Wm. Cochrane’s right to him, &c.
The deed of trust marked A, was executed by John Syme, Wm. Cochrane and Wm. Cunningham, and conveys from Syme to them as trustees, eight slaves, for the special purpose, as is therein expressed, of selling them, or any of them, and applying the money arising therefrom, in the first place, to the payment of all Syme’s just debts, to purchase a small farm, for the use of his wife and children; the deed for which was to be taken, in the names of the trustees, and thereby to clothe Mrs. Syme and children, genteely; and to lay in a stock of provision, for the year ensuing the date of said deed. Should it not be necessary to sell all of the eight slaves,, for the purposes aforesaid those not sold, were to re *599 main in trust', for Mrs. Syme and children. The other deed of trust embraced the whole of Syme’s remaining property, and conveyed it to the trustees, for the benefit of his heirs, and for the support of himself and wife.
Trust property is not subject |°0®niseSEgdUón a judgment —^nst the trastee on a note executed agaEe¡ndi-tC8 vidual,
Mrs. Syme and some of the heirs, becoming dissatisfied with Cochrane’s management of the estate, the suit in chancery alluded to, was instituted, charging him with infidelity, respecting it; with diverting its proceeds to his own use; and with insolvency.
lie was called upon to exhibit an account of his proceedings; a withdrawal of the estate from his hands, is prayed for. .
The principal question involved in the case, is, whether the sale of Cochrane's right to Absolam, was valid. We think it was not.
It is true, that the trust estate, for the purposes of the trust, was in the trustees; but it was not subject to execution, issued on a judgment recovered against Coch-x’ane on a note executed by him as an individual.
He liad property in his hands as trustee, which might have been sold for any of the purposes specified in the deeds; but for reasons, best known to himself, (for ought we know, because he liad used lor his own purposes, a portion of the trust funds,) lie executed the note, as for a debt of his own. If trust property could be legally sold, under such an execution, no man could be willing to place his property in the hands of trustees; for neither the most earnest desire, nor the most vigilant fidelity on their parts, to promote the interests of the rnstui quo, trust, would be sufficient safe-guards against the danger of an entire sacrifice of it, if one of them happened to be involved in debt, beyond his ability to pay, with his own estate.
That the trustees had a right to sell, and were able to convey a valid title to a purchaser, for any part of the property, is not denied; but there is a striking difference between such a sale, made by those, in wdiom the trust was jointly reposed, and the one now under consideration.
He who might not scruple to confide his estate for the support of his wife and family, to friends selected for the purpose from a conviction of their honesty, might *600 yet well hesitate to place it, in a situation, exposed to be sacrificed at public sale under execution issued on a judgment recovered against either of them, individually.
In England, the goods of a testator cannot be seized in execution of a. judgment -against the 'executor in his ■ own right.
Personal ' property pass- ~ ed by delivery only. Tcrendera Sale'of personal propferty valid there must be a delivery; tho’ not necessary that officer should formally■ hand it over to the purchaser; but it must be actually levied upon ■’by the officer; must be -shown to the Udders at the time of sale, and be within ■the power of ■the officer to ■be delivered.
In a modern case in England, which we shall not cite, as it is an opinion delivered since 1770, it was decided* that goods of a testator, in the hands of his executor, cannot be'seized in execution of a judgment against the executor in his own right.
In the case of Jackson on demise of Norton and Burt vs. Willard, IV John. Rep. 41, it was decided, that lands mortgaged cannot be sold on an execution against the mortgagee, before a foreclosure of the equity of redemption, though the debt is due, and the estate of the mortgagee has become absolute at law.
But independent of the foregoing consideration, the sale in another point of view, was illegal, and conveyed no title to Keizer for the slave. The sheriff, neither at the time of making the sale, nor at any other time, had the possession of the slaves Bostick had not been actually divested of his possession.
He brought him forward on the day of sale, but refused to deliver him to the officer, who was not willing to risk the consequences of taking him.
He did not, therefore, sell the slave, but Cochrane’s right to him, proclaiming to the company, at the time of the sale, that he would not deliver possession to any one, who should become the purchaser.
Now a chose in action is not the subject of execution; personal property passes by delivery only; and to make a sale of it, valid, there must be a delivery.
It is not necessary, that the officer should formally hand it over to the purchaser; hut it must be actually levied upon by him, must be shown to the bidders at the time of the sale, and be in his power to be delivered actually^
This is absolutely necessary to prevent fraud, lest by keeping it out of view, or refusing to deliver it, it may be sacrificed at greatly less than its value’; or than it would, under oilier circumstances sell for. It is by no means probable, that a person wishing to buy, would give nearly as much for property, which the sheriff at *601 the time of sale, gave such demonstrations of a distrust of his right to sell, that he would not venture to deliver it, and which indeed, was at the very moment in the adverse possession of a man, who, in connexion with others, claimed it, as he would, for the same property, to be placed by the officer of the law, in his possession»
Bledsoe and Combs, for appellant; Hoggin, for ap" pellee.
The present is a striking illustration of this view. Slaves will perhaps more readily, than any other property command at sale under execution, their value; yet Cochrane’s right to one, admitted to be worth $>300, was sold for $31, on a credit; and purchased by an individual, who knew, that the man who had him in possession, had refused to deliver him, and who knew that the alleged right which he was purchasing, was that only of a trustee, against whom, at the time, a suit in chancery was depending, in behalf of Bostick and others, to deprive him of his powers as trustee upon a charge of fraud and mismanagement.
The judgment of the circuit court must be reversed, and the cause remanded, with directions to enter judgment, upon the agreed case, in favor of the appellant.